Please rise, the Honorable Judges of the United States Court of Appeals for the Third Circuit. Oye, oye, all persons having business with the Honorable United States Court of Appeals for the Third Circuit are admonished to draw near and give their attention, for this court is now in session. God save the United States and this Honorable Court. Please be seated. Good morning and welcome to the United States Court of Appeals for the Third Circuit. We're glad you're with us today. Before we call our first case, two items. One is I'd like to see if Judge Roth can hear us. Are we? Yes, sir. I'm hearing you fine. Terrific. That's great. And another piece of business which is very important is we have a designated judge with us today, Judge Robert Dow. He's a U.S. District Judge from the Northern District of Illinois, and notably he is currently the Counselor to the Chief Justice of the United States. So we're happy to have him with us today. We thank him for coming up and helping us with our caseload, and we're glad to have him. I thank you very much, and Judge Roth, I thank you as well for the opportunity. It's nice to feel like a judge for a day. Good job. It is. Our first case for the day is United States v. Eduru, No. 24-2387. May it please the Court. Julie Roberts for Appellant Appendra Eduru, I would like to request three minutes for rebuttal. That will be granted. Two main errors rendered Mr. Eduru's trial fundamentally unfair. First, the trial court abandoned its mandatory duty to inquire into Mr. Eduru's need for an interpreter. And second, the court refused to strike a biased juror for cause. The Court Interpreters Act mandates a district court sua sponte ask about the need for an interpreter when on notice that a person has difficulty with English. I know you're getting to this, but the other side would point it to the record and say, well, how would he have known? It looks clean to us. How do you respond? So when looking at the record, we are not only looking at Mr. Eduru's abilities, but we also need to look at his difficulty with English. And the record here shows the court was on notice of this difficulty. First, trial counsel filed a motion requesting an expert who speaks Mr. Eduru's primary language of Tolugu. Then the court listened to the interrogation recording as part of the motion to suppress. At the very latest, when Mr. Eduru was on the stand testifying in front of the jury, there was readily apparent indicia of misunderstandings. And that's the standard that the Third Circuit set forth in D.C. Well, let's get more granular. What are those indicia? So starting with the interrogation video, in that video, Mr. Eduru is struggling to answer a question. And at one point, he says, I don't know how to tell. There's non-sequitur answers. There's grammar and syntax problems. There's evidence that he wasn't understanding the questions. And those appendix sites are in our briefing. At trial, things got worse. And this is understandable. It's a high-pressured hearing. He's being peppered with questions from the prosecutor. He's trying to give precise answers. And he says multiple times, I don't understand or I didn't understand the question. That's appendix 665, 680, 695. The court reporter interrupts 15 times asking for clarification, at one point admitting I didn't understand what he said, appendix 673. If the court reporter's not understanding Mr. Eduru, the jury is likely not understanding him either. He's using nonsensical phrases. He's having difficulty understanding questions, finding words or vocabulary. And again, there's grammar and syntax problems throughout. And so what's important here is the judge doesn't need to be certain. And the Third Circuit tells us this in B.C., that the judge just has to consider whether the person might have difficulty with English. And this is also supported by the Tenth Circuit in Osana, which has very similar fact patterns to our case, where someone testified without an interpreter, and there the court remanded. Because just like here, the district court never made any fact findings about the defendant's language abilities and the difficulties. And so this case is a hard one. Could we just get over to the Court Interpreters Act? Is it your argument that there's a mandatory duty on judges to inquire for the need of an interpreter? Yes, Your Honor. And the language in the Court Interpreters Act specifically says that the presiding judicial officer on such officer's own motion can appoint an interpreter. The statute anticipates this situation where trial counsel remains silent. Maybe this is something outside of their wheelhouse. And there's a protective mechanism built into the Court Interpreters Act for this exact reason. If a person doesn't understand, doesn't have the ability in English, if they have difficulty with English, we cannot be confident that that was a fair trial. Could I ask you a question about there's a Judge Baxter issued an order, a motion to suppress, and there are some other motions, a pretrial order in September of 2023. And she states on page six of that, a guru in Indian National speaks and understands English. Is there any duty on counsel once the judge has raised the issue, as she arguably has there, to correct that misapprehension once it's on the table? So first, for the motion to suppress, that issue did not involve Mr. Guru's language ability. The premise of the motion to suppress was not that he, let's say, didn't voluntarily know his rights, right, his Miranda rights. The court there was determining kind of the circumstances, whether there was a forced confession. But even if it's, so it might be dicta. Sure. But you assume that it's not a very long order. It's 11 pages. You would assume that counsel would read the order and take note that the judge seems to think that my client speaks and understands English, and therefore she's put this issue on the table. Is there any obligation on counsel at that point to say something? Or, you know, the issue has been raised, and therefore the judge should understand that, well, I guess they agree with me. Certainly this would be easier if trial counsel said something. But again, the Court Interpreters Act anticipates that trial counsel wouldn't. And that's why, because this is such an important constitutional right, the statute places this burden equally on the court. Just so we can have our framework, this is plain error review on this issue, right? So we would. Yes, right. I do not believe that plain error review applies here. In this situation, this type of claim will always be brought the first time on appeal because it's about the court abandoning its statutory duty. If trial counsel would have said something, right, and would have brought this to the court's attention, the court would have made an inquiry, the court would have issued a ruling, and then we'd be in abuse of discretion. In this situation, the claim is that the district court abandoned its statutory duty. In that situation, this claim is brought for the first time on appeal. You mentioned at the beginning that there was a motion at the beginning of the case about raising the language issue. So the motion that was filed was to ask for an interpreter. Well, for an expert who spoke Mr. Aduru's primary language of Tolugu. So it was not asking for an interpreter, but it put the court on notice that Mr. Aduru's primary language is not English and that he needed to speak to a professional in his primary language. Well, people speak more than one language, right? Absolutely. And here Mr. Aduru does speak and understand some English, but that's not the question. But he was a customer service person. He dealt with English speakers all for his job, right? Well, so we actually don't know that. In the record, the court never explored his employment. So we don't know, was he using a translation device? Was he reading off a script? Did he have assistance? Because the court never inquired, we don't have those answers. How about his college education? I mean, he was here to be a college student, right? Absolutely. Is there any evidence in the record of a transcript? Do we know how many years of English he took in his home country? Do we know anything about that that would have tipped the judge off that, for example, he's not able to take college courses in English? I assume that the school is teaching in English. Your Honor, that's a great question, and that's what should have been probed by the district court below. We don't know the answers to those questions. And, yes, Mr. Adjuru was here studying abroad, but we learned during sentencing that he was failing his classes in America. We don't know why because the court never inquired. Just because someone speaks and understands some English does not mean that they don't need an interpreter, especially when they're testifying and their credibility is at issue. He has to be testifying precisely. He needs to be giving direct answers. And he's up there by himself without an interpreter only in the United States for about one year. And no one had asked him, is English your primary language? Do you have difficulty with English? Can you sufficiently understand English? And make that determination. And that's why this court needs to remand. And under either standard of review, we do believe we can satisfy plain air here because Mr. Adjuru was prejudiced. He testified. The jury made an adverse credibility determination. The prosecutor used his language against him and told the jury, he's not answering the questions. He's giving long, rambling answers. It was used against him. You don't have a whole lot of time. Let's jump over to the strikes. That's your second issue, right? The vice juror issue, Your Honor? Yeah, that's right. So with Juror 29, during Vaudier, it became clear that he was a 911 dispatcher who believes that a person who's been charged with a crime is probably guilty. When he was asked to explain this belief, he didn't show confusion or maybe I misunderstood. He doubled down. He said, I believe the police did their investigation, which means they have the information to prove he's guilty. Yeah, but there was more too, right? And then he was asked, can you set aside that belief? And he did not say yes. His answer was not clear and it was not unequivocal. He said, I could set that thought aside with the evidence. That is not the standard. The U.S. Supreme Court tells us in Ervin that when a juror expresses a preconceived opinion as to guilt and requires evidence to overcome that, that juror is impartial and cannot sit on the jury. So why not strike him with the peremptory? So things got complicated with the peremptories. So Juror 29 ultimately was relegated to the alternate pool. In the alternate pool, defense counsel only had one strike. There were two jurors in the alternate pool that he wanted to strike for cause. There was Juror 29, who had the preconceived opinion of guilt, and Juror 31, who expressed concern about the subject matter involving children. Trial counsel opted to strike Juror 31. There were no more peremptory challenges for Juror 29. Juror 29 initially sat as an alternate. Ultimately, Juror 7 was removed, and Juror 29 sat on the jury and deliberated. And that juror believed that Mr. Aduru was likely guilty by virtue of being charged. Mr. Aduru was deprived of an impartial jury, and that requires automatic reversal in this case. So every judge has their own jury selection procedures, and I read those judges as carefully as I could. But I assume defense counsel could not have exercised a peremptory on 29, even though it looked like 29 was only going to be an alternate pool? So trial counsel was not able to exercise a peremptory challenge because he was in the alternate pool. The kind of issue I talk about with the court going out of order and not allowing Mr. Aduru the free exercise of his peremptory challenges against the jurors in the first 28, that is what prevented him. Did counsel say anything about, I would exercise a preemptory and strike this juror if I had any preemptory challenges left? Did he make any statement of that type for the record? Your Honor, he did not make that statement, but the district court, after denying the forecast strike, told trial counsel, you might want to use one of your peremptories. But then the court deviated from its jury selection order and manipulated the jury pool, relegating juror 29 and 31 to the alternate pool, preventing him from using one of his 10 peremptory challenges on both of those jurors. But did counsel have anything to say about it? To say, hey, I've got extras on this side, but can I exercise one on the other side? Counsel did not. But rule 24 is clear, that counsel only gets one strike for alternate jurors. But I suppose the judge in her discretion could have allowed one of the non-alternate strikes to be used on a juror that would be in the alternate pool. I guess the argument you just made, I think, would be much more compelling if it had been made in the trial court. I guess that's the way I'm putting it. Because I see the conundrum you're raising here. I have one strike. I have two people I want to strike. I've only used half of my peremptories. Why can't you give me another peremptory? A lot of judges would have done that. And unfortunately here, trial counsel did not ask for that. But jury selection is in the province of the judge. And here, the judge interfered with Mr. Aduru's free exercise of peremptory challenges, which prevented him from getting rid of Juror 29. You made a statement before. You said there's two. We're okay. You're on our time, so it's okay. But you've got Juror 29, who we know about, the other one who has some problems with the subject matter of the case. You had said, you know, he's got two bad jurors. He's got one strike. He chose the other one. Was that in any way communicated to the court? In my review of the record, it was not. I didn't see it.  Okay, great. Why don't we get you on rebuttal, and we'll let your friend present his arguments. Thank you so much. Thank you.  Morning. Morning. May it please the court, AUSA Donovan Kokus on behalf of the United States. I think I'll start with the translation issue, the interpreter issue. I think the standard review is going to be plain error. I know there's the Third Circuit Haywood case, but when I read it, that looks to be applying a waiver rule in a case where someone had said, I was given an interpreter, but they misinterpreted. And that makes sense to me that that would be a waiver. Whereas in this case, the structure of the rule itself does seem to presuppose that either the court or counsel can raise an interpreter issue. So I don't go as far as the defense to say that means there's a duty. It just means it doesn't matter who recognizes there's a problem. If someone recognizes it, then it can be addressed. Okay. In this case, I think the defense has been stating what the rule states in a way that's skewed toward the defense. It's not, do you have difficulty with English? It's not, are you fluent in English? The rule says, if on the court's own motion or on a party's motion, does the court learn that a defendant or witness is likely to be inhibited in understanding or in communicating or comprehending the proceedings because of an English deficit? Okay. So I agree, English is not Mr. Aduru's first language, but he definitely, the district court definitely didn't get notice of that latter category. And we can just start with the judge by the time this guy is in trial knows he was from India where English is an official second language. She knows he's here on a student visa at two universities where classes are taught in English. She knows that he's texted for weeks in English with what he thinks is a 13-year-old girl. No apparent problems there. In fact, if you look at the time notations on the text messages, they're boom, boom, boom. It's not like he's taken a long time to come up with English responses. She knows that he is spending his free time in Erie hanging out in bars trying to pick up American women. She knows that he has sat for an 80-minute interview in English with police. And if you watch that, which I would urge you to do because it's very enlightening, he's very much like a poker player. He is doing this strange head wobble thing, which he attributes to nerves. But in the beginning, he thinks he's holding all the cards because he has deleted all but the prior two days of text messages from his phone. So he's eliminated everything incriminating. Instead, what you've got is when are we going to meet? Where are we going to meet? It's only a few minutes in when he realizes the officers have the other phone that he now has to adapt his story. And if you read the transcript and especially watch the video, he's quite adaptable. I mean, he's very nimble at sort of trying to figure out a line to walk. It's not a persuasive line, but he does tell a coherent story. And his story is that he went to the park believing he was going to have sex with a 13-year-old girl. And instead, the FBI comes down on him. He said, I thought it might be a boy, but I went to the park to confirm that this is a girl. And if it was, I was going to have sex with her. That's ultimately what he says. And he reiterates that at trial on cross-examination. Now, all of those factors seem to be grist for. This is a guy who seems to be speaking a whole lot of English for someone who doesn't speak English. This is what the judge sees. The judge sees his attorneys all saying they have no problem communicating with him. The judge presumably sees him interacting with his attorneys in the courtroom. There's just no indication in the court's mind that this man is going to be having any kind of difficulty communicating at trial. And he doesn't. At trial, he testifies for hours. Well, but your adversary points out, and I think it's in the record, that the court reporter had some difficulty figuring out what he was saying. And so from this, I think you can infer, and have to infer, because remember, there's no objection. So it's plain error. I think you have to infer that the cause of that is what the court said to him at the very beginning, which is, Mr. Aduru, you have a tendency to speak fast, and you have an accent to speak slowly. I think the inference is that she's not understanding him because either he's speaking too fast, or he's got a thick accent, or both. There isn't any indication the jury fails to understand him. Now, I will say, the question is not fluency, right? The Carrion case seems to say fluent is one side of the spectrum, clearly not entitled to an interpreter. What's the standard, then? I'm sorry? What's the standard, then? So I think this is why I went with the Edouard case out of the 11th Circuit. The standard is going to be, it's in the district court's sound discretion. If no one has objected, even if someone has objected and says he needs an interpreter, then the discretionary question is, did the court err in finding he didn't need one? If, in this case, they're saying the district court should have asked because no one brought it to the court's intention, it should be, it's in the court's sound discretion, based on what he or she sees or hears. Because judges can only exercise discretion on the things they perceive. So one thing they would have definitely perceived was the request for an interpreter, or an expert, who spoke the language of the defendant. And that's clearly putting the court on notice that, at least for something that's complicated, the defendant might struggle. So I disagree for two reasons. I'm sorry, I didn't mean to interrupt. No, no, go ahead. All right. So I disagree for two. One, it wasn't a request for an interpreter. It was a request for a prison transfer, so he could be closer to that interpreter. And tellingly, the court says, and correctly, because they don't appeal this issue, the court says, the BOP makes housing decisions. I don't interfere with those. So I can't transport you to be closer to that interpreter. But what I will do, since you're indigent, if you want that interpreter and that psychologist to come out and give you a psych eval, those can be flown out to you at government expense. Now, what's interesting is, you know what happens after that? Nothing. His counsel did not get one of those psych evals in Telugu or any other language, as far as we know. And that tells you that, number one, really this wasn't about a psych eval. This was about a prison transfer that he didn't get. And number two, it tells you that he knows this man speaks sufficient English. Now, as far as — Now, who's he when you say he knows? The lawyer? His attorney was a man named Adrian Rowe. It was not — Sure, but I think your colleague would say the whole point of the act is that if the judge is on notice, and here we have a request for some language accommodation, doesn't the judge have an obligation to inquire then? And so this brings me to — You just don't think that's enough notice? I don't think it's enough notice in light of all the countervailing factors. But here's something else. I think it matters that this is a psych eval because even people who are fully fluent in a second language might want a psych eval in their first language because there are cultural nuances that come into play that might be lost in translation if you did that. I suppose the argument could be made, though, also, if they're being cross-examined in a trial facing a long prison sentence, they might want the translation as well. And if so, then they might ask for one, right? Which he did when he sat down for the 80-minute interview after he was arrested. He could hardly deny it because of all the texts in English and everything else. And then I think what else is interesting, and this really goes more to the prejudice prong if you even get there, but you have to remember, too, as Your Honor said, I mean, this man, what did work for a global company in a call center in India talking to a male? Well, now, on that topic, your adversary pushed back on that and said, really, there's nothing in the record to give much clarity on that. But that kills her on plain error review, Your Honor. Like, that's the problem. If there's an ambiguity, it cuts against the person raising the error for the first time at trial. And let's talk about something that's not ambiguous, which is at sentencing, he offers a couple of affidavits or letters, I would say, from people at each of the two universities where he studied here in the United States. Neither of them said, I can't believe he did this. This guy doesn't speak English. In fact, one of them said something to the effect of, I can't believe it because this guy always participated in discussions and spoke out about women's rights. Again, this strikes me as more grist at sentencing, I know, but on the prejudice prong, the Supreme Court has said you can consider stuff that happened even outside of the trial context. And at sentencing, this is just a consistent line showing you this man speaks English. And if that weren't enough, he tells the probation officer when he's being interviewed for the PSR, I speak and understand English. That interview occurred two months after trial, by the way. So if he learned English, he learned it in lightning speed if he didn't know at a trial. And then finally, I just raised one last question, one last issue on the fourth prong of plain error. Because this is, I don't often call an issue frivolous. Legally, this is not frivolous. I think we can argue whether the court had a duty or not. But on these facts, it's frivolous. And I would just leave you with one more point, which is, if this man had not spoken English, that would have been a defense to the underlying charge. The fact that his attorney raises an entirely different offense, a different defense, which is that I went there on a lark knowing this was actually just a male scammer, that tells you his attorney knew this man spoke sufficient English. And he even said so in closing, you know, this is a strange man with a strange way of carrying himself. Not this is a man who's a stranger in a strange land and doesn't understand the language. Could you turn to the questionable juror and at least the peremptory strikes? Right. So I'll be brief on the juror. I mean, I think this looks to me like any other juror who's ever been, who ever said, oh, I believe X, but has been rehabilitated. I don't see evidence that that juror said anything ambiguous. The juror saying, oh, yes, with the evidence was just if you read this in context, the court had said, do you think with the evidence you could do blah, blah, blah. And he says, yes, with the evidence, he's just repeating what the court said to him. What's your take on the conundrum of having two jurors you want to strike at the alternate phase and only having one strike? Well, so first I would say it doesn't matter, Your Honor, if in fact they haven't shown that that juror 29 was biased. And I listed the case. Oh, by the way, I mean, I think one thing the court must do in this case is clarify the standard review on this issue, because I think it should say that Rivera overruled Kirk and Rusca because it did and all the other circuits I could find did. And I found even a Seventh Circuit case called Patterson that overruled it from 2001. And it was overruled on other grounds by Apprendi, I want to think, but it's still good. Rivera? No, Patterson. Didn't Rivera throw some shade on our Kirk case? No? It did. That's my point. Oh, I'm sorry. My point is that it threw shade on Kirk and by extension Rusca because both of them relied on the Swain dicta. So that's why I think the standard review is going to be plain error for this too. So on plain error review, I don't know how they've shown a problem because all they have is a strike form that showed his attorney just used 6 of 10 strikes. It doesn't show why. It's not uncommon for attorneys sometimes to use fewer than all their strikes. I get fewer than all, and I sometimes use fewer than all my strikes if I want to show off to the jury how confident I am in them and my case and everything else. So no one knows why counsel used fewer than all his strikes, but that's what it is. Were they written down on a piece of paper? So I assume the paper just has numbers on it. Page 719 of this record. Yeah, there is a strike form where you can see counsel going G1, G2, G3, and then the defense going D1, D2, D3, and they both end at 6. Well, can you answer Judge Dow's question? Perhaps you have, but what does one do when you have in the alternate pool two objectionable jurors, one strike? So first of all, I don't know, but I think in the end it doesn't matter unless you can show the court did something wrong somewhere else elsewhere in the pool, and they haven't shown that the court clawed back four strikes of the main pool, right? So are you saying that he could have used one of the four remaining on the second alternate juror? No, no, no. I mean, in fact, the law is pretty clear that those strikes are cabined to the pools for which they are earmarked. So if you get 10 strikes of the defense, that's main pool. If you get one for the alternates, that's the alternate pool. When Judge Dow mentioned maybe some judge might give some grace on that, I don't know. I've never seen that. I can't say it's impossible, but all I know is in this case, none of that matters, because what happens is he only decides to use six as far as we know. There's no evidence the court clawed back any, and that's where I think the presumption of regularity comes into play. And I know the defense has said that this is a radical application of presumption of regularity, but no, the Jones case that I cited from this court actually shows the court applying it in a case like this where it's a direct appeal of a criminal case where the defendant is saying something weird happened with my counsel, and the court says, well, we'd expect to see a record of that if it really happened. We don't. Ergo, on plain error review, it doesn't. Well, that was a question I had. Does the presumption of regularity even apply in direct criminal appeals? It does, and so the Jones case answers that pretty conclusively, and it's published. In this case, an alternate did sit. An alternate did sit, yes. And the alternate who sat was 29? Was 29. And if the lawyer had struck 29, the alternate who was sat would have been 30. I suppose that's right. And not 31, who's the one they didn't want, the one they struck. Yeah, I know. So that's the interesting tactical error. If the lawyer had picked 29, we wouldn't be here on this issue. Right, and it's the interesting tactical error, right, because it's no secret that the top two alternates would be the ones who sit, right? Next one up, yeah. To me, if it's a toss-up between two, you would always choose the lower number one. I don't know why. Yeah, you'd have to have bad luck in a short trial like this with short deliberation to have both alternates seated. In this case, you had one alternate who came in like that. Right, right. Okay, thank you. I don't know how I blew past this and tagged every other page on this. And that page is the core. That's the whole defense's case about this. Now, the defense has said, well, and I'm sorry. Go ahead. The defense has also said, well, the court was doing some monkey business between the two pools. Nothing like that happened. As far as just reading that whole transcript twice now and then looking at the strike form, what happened is what always happens, which is that as people from the main pool, 1 through 28, were stricken for cause, then folks in the backfill pool, which is 33 and up, came in. Had any of the alternate jurors from 29 through 32 been stricken for cause, the same exact thing would have happened. It's just nobody struck any of those for cause.  Well, all right. Thank you, counsel. Thank you. And we'll hear rebuttal.  Starting with the interpreter issue. So, again, ability to speak English is not dispositive to this question. The question is whether there was difficulty with English. My friend on the other side said the issue was maybe he was speaking too quickly. But the record doesn't show that. The record shows three instances where trial counsel asked Mr. Adjuru to slow down. The other interruptions, the court reporter wasn't saying slow down. We've all been in court and had a court reporter saying that they tell people to slow down. That's not what happened here. The court reporter said, I don't know what he's saying. As to the text messages, these are rudimentary text messages. Again, this is someone who's supposed to have a master's level education. Those texts do not show someone with proficient English. And then to the point that Mr. Adjuru, you know, did engage with the court, the Third Circuit told us in B.C. It's ineffective to presume that just because someone can answer basic questions or respond to yes or no questions, that they are fluent in English and don't need an interpreter. The fact that Mr. Adjuru was able to speak in English to the detectives, that he was able to speak in English during his trial testimony, is also not dispositive. The Ninth Circuit, Amorgia Rodriguez, tells us that just because a person testifies in English, that does not answer the question of whether they needed help. See, isn't this the whole purpose of plain error? That a lawyer should be speaking up when he senses or she senses that there may be a language difficulty? Absolutely. But we don't have that. We don't have that, but the statute doesn't require it. We're all reading the same words. But the statute doesn't require it. The statute requires the court to also make an inquiry when there's difficulty. And the case cited in our briefing, Pate v. Robinson, this is a Supreme Court case regarding competency and the failure of the district court to fulfill its statutory duty to hold a hearing when there were indications that this person had mental health issues. The court below said there were no problems. Look, he engaged with the court. Child counsel was asking questions. They never asked for a hearing. But there, the Supreme Court said evidence of ability is not dispositive. There was evidence of difficulty in this record. And there, the Supreme Court did not apply plain error. But even if this court does apply plain error, I would encourage the court to look at the Tenth Circuit and USANA, as well as Hassan. In both of those cases, the court remanded for factual finding even on plain error review. And here, because Mr. Aduru testified, because the jury made an adverse credibility determination, because witnesses testified in English, we cannot be certain that Mr. Aduru received a fair trial. Okay, thank you. We thank both counsels for their excellent argument today and for their excellent briefing. We will take the case under advisement. And if counsel is amenable, actually, Judge Roth, do you have any other questions? I'm so sorry. I have no further questions. Okay, great. If counsel is amenable, we would love to greet you at sidebar and to thank you more personally.